UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
G. SIMONS & CO. S.A.,                              MEMORANDUM DECISION
                                                   AND ORDER
       Plaintiff,                          98 Civ. 5162 (GBD)

    -against-

NEW BAR OF NORTH AMERICA,                                              :

       Defendant.

-------------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

    G. Simons & Co. S.A. ("Plaintiff") brings the present action pursuant to 28 U.S.C. § 2201 against New Bar of North America ("Defendant"), seeking a declaratory judgment that Plaintiff is not liable to Defendant for the alleged loss of fifty-five cartons of electronics in transit between New York and Moscow. Presently before the Court is Plaintiff's motion for summary judgment.

I. Background

    Plaintiff is a managing agent in marine insurance and maintains an office and place of business in Antwerpen, Belgium. (Affidavit of Bart A. Salomone ("Salomone Aff."), ¶ 6, sworn to on June 6, 2000.) United Transport Associates, Ltd. ("United Transport") is a freight consolidator and forwarder that maintains an office and a place of business at John F. Kennedy International Airport, New York. (Salomone Aff., ¶ 7.) United Transport was originally a named Defendant in the Complaint, but it failed to appear, and a Certificate of Default was entered on May 11, 1999.

    On or about September 1, 1993, Plaintiff, on behalf of AG 1824, an insurance company, issued to United Transport a Marine Open Cover Policy No. 07945 (the "Policy"). (Salomone

Aff., ¶ 5.) Pursuant the Policy's terms, United Transport received coverage for all shipments of goods "falling within the scope" of the Policy, subject to the terms and conditions contained therein. (Salomone Aff., Ex. 1.)

Defendant is a New York corporation with an office and a place of business at 700 Third Avenue, Brooklyn, New York. (Answer, ¶ 6.) Defendant is generally in the business of purchasing goods in the United States for export to Russia. (Deposition of Peter Randall ("Randall Dep.") at 9, taken on April 21, 1999.) Peter Randall ("Randall") is a Vice-President of Defendant and a 25% shareholder in the company. (Randall Dep. at 5-6, 11.) Randall learned of United Transport through a newspaper article advertising low prices. Id. at 16. Randall contacted United Transport to arrange shipment of 336 cartons of electronics from New York to Moscow and to insure the shipment under United Transport's open cover policy. Id. On January 17, 1994, Randall met with individuals at United Transport, arranged the shipment, and discussed a $150,000 open insurance policy for the shipment for which the premium would be $750. Id. at 25-26.

On January 19, 1994, Randall picked up the 336 cartons of electronics and delivered them to United Transport's facilities. Id. at 23-24. Thereafter, United Transport filled out Certificate 93 UTA 0013 (the "Certificate") for a shipment of "electronics" from New York that arrived in Moscow on January 20, 1994. (Salomone Aff., Ex. 12.) The Certificate, insuring the goods in the amount of $150,000.00, reads: "This is to certify that open cover no. 07945 has been effected with 'AG 1824' represented for this insurance by G. Simons & Co. s.a. of Antwerp . . . to insure cargo for account of: United Transport Associates Ltd.." Id. Defendant is not mentioned anywhere on the Certificate. Id.

At some point after the shipment's arrival in Moscow, it was discovered that 55 cartons of electronics were missing. Plaintiff's claims agent, International Adjusters, Ltd. ("International Adjusters"), reports first receiving notice of a claim with respect to the lost shipment on March 31, 1994, through a letter from United Transport dated March 28, 1994. (Salomone Aff., ¶ 9.) Plaintiff investigated the claim, but denied it on the grounds of late notice and breach of warranty. (Salomone Aff., ¶ 21.)

Plaintiff filed its Complaint with this Court on July 20, 1998, pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment that it is not liable to Defendant for the lost shipment under the insurance policy with United Transport. Presently before the Court is Plaintiff's summary judgment motion. Plaintiff argues that: (1) Defendant is not an insured under the Policy; (2) Defendant has no insurable interest in the 336 cartons of electronics; (3) Defendant did not provide International Adjusters with notice of claim within a reasonable time; and (4) Defendant breached the insurance policy warranty requiring that a discharge survey be conducted.

II. <u>The Standard for Summary Judgment</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered forthwith if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250 (1986).

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1982)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and the non-moving party may not "rest upon . . . mere allegations or denials," St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). However, only when it is apparent than no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).[1]

III. Discussion

    A.  The Scope of the Policy

Determining whether Defendant is covered under the Policy and Certificate is a question of contract interpretation. In a contract dispute, a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning. See Sayers v. The Rochester Telephone Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993); Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir 1992). "Contractual language is unambiguous when it has a definite and precise meaning, unattended by

---

[1] The parties agree that New York law governs interpretation of the Policy.

any danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 461 (2d Cir. 1994).

Here, both the Policy and the Certificate are plain on their face. The policy reads:

> As per general conditions, the Particular Conditions and Special Provisions attached herewith, the Undersigned Underwriters insured the goods specified up to the amount they have signed for an account of:
>
> UNITED TRANSPORT ASSOCIATES LTD.
> JFK INT. AIRPORT 167-43 PORTER ROAD
> 11434 JAMAICA, NEW YORK/USA
>
> called hereinafter the Assured acting for himself or for account of whom it may concern.

(Salomone Aff., Ex. 1.) Similarly, the Certificate reads:

> This is to certify that open cover no. 07945 has been effected with "AG 1824" represented for this insurance by G. SIMONS & Co. s.a. of Antwerp (a 100% subsidiary of "AG 1824" - Belgiums Major Insurance Group) to insure cargo for account of: United Transport Associates Ltd. It is further certified the goods described & valued below are insured under this open cover as specified.

(Salomone Aff., Ex. 12.) It is undisputed that Defendant is not named anywhere in the Policy or the Certificate. It is also undisputed that the Certificate clearly states that "[t]his certificate requires endorsement in the event of assignment," and no such endorsement was ever made. Id. Furthermore, Randall testified that prior to the date of his deposition, he had never seen the Certificate. (Randall Dep. at 48-50.)

In response, Defendant offers Estee Lauder International, Inc. v. World Wide Marine Service, Inc., 923 F.2d 238, 240 (2d Cir. 1991), for the proposition that an intended third-party may recover against a carrier and a carrier's open cargo insurer. However, the Estee Lauder case

is readily distinguishable from the present facts, as the relevant insurance policy there actually named Estee Lauder as a third-party beneficiary:

> The Travelers Indemnity Company in consideration of a premium as agreed and subject to the Conditions and Warranties specified below, on the back hereof and/or attached hereto, does by this Policy insure World Wide Marine Service for Estee Lauder Intl.. . . as well in his or their own name as in that of those to whomsoever the subject matter of this Policy does or shall appertain.

Id. at 239. Under New York Law, only an intended third-party beneficiary is entitled to enforce a policy of insurance, and such intention to benefit a third-party much appear within the four corners of the contract. Stainless, Inc. v. Employers Fire Ins. Co., 418 N.Y.S.2d 76 (1st Dept. 1979), aff'd, 49 N.Y.S.2d 675 (1980). While in Estee Lauder the intention to include Estee Lauder as a third-party beneficiary was clear from the plain language of the policy, here, no such intention is present.

The Policy never mentions Defendant. (Salomone Aff., Ex. 1.) The Certificate expressly states that the Policy insures "cargo for account of: United Transport Associates, Ltd." and "requires endorsement in the event of assignment." (Salomone Aff., Ex. 12.) Finally, Randall testified to never having seen a copy of the Certificate prior to April 21, 1999, the date of his deposition. (Randall Dep. at 48-50.) All of the above negates any intent to benefit Defendant under the insurance contract between Plaintiff and United Transport, and, as such, Defendant is not insured under the Policy or Certificate.

### B. Insurable Interest Under the Policy

Plaintiff contends that Defendant does not have an insurable interest in the 336 cartons of

6

electronics covered by the Policy. The legal standard for determining whether an insurable interest exists can be found in Groban v. S.S. Pegu, 331 F.Supp. 883 (S.D.N.Y. 1971), aff'd, 456 F.2d 685 (2d Cir. 1972):

> [I]t is said that "any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." If an assured has a contract under which the title of a cargo would accrue to him upon delivery and he would suffer from loss of the goods prior to the delivery, an insurable interest exists . . . The assured need not have title to or legally enforceable in rem rights in the property to have an insurable interest. If any economic advantage from the continued existence or pecuniary loss from destruction or damage of the insured property results to the assured, he has an insurable interest.

Id. at 894 (internal citations omitted). Defendant, as the insured, bears the burden of proving that it had an insurable interest in the electronics. Lawson v. Hotchkiss, 125 N.Y.S. 261 (1st Dept. 1910). Defendant has not proffered evidence from which a fact finder could find that it has met this burden.

Initially, Randall testified that the electronics were purchased with funds from the bank accounts of two separate corporations and not by Defendant:

> Q: With respect to the funds that were paying these invoices, where did those monies come from? Did these monies come from the bank accounts of I&P Flamingo and Concorde?
>
> A: Bank account I&P Flamingo and bank account of Concorde directly.
>
> Q: Not from the bank account of New Bar?
>
> A: No, not from the bank account of New Bar, because New Bar of North America has nothing, zero, $10,000.

7

(Randall Dep. at 112.) It therefore appears that I&P Flamingo and Concorde were in fact the owners of the electronics. Defendant responds to Randall's testimony by characterizing the purchase by I&P Flamingo and Concorde as a financing agreement between the two entities and Defendant. (Def's. Br. at 10.) However, Defendant has produced no document which would evidence such an arrangement. Defendant also asserts that "the undisputed facts demonstrate that New Bar was in fact the undisputed owner of the electronic goods." In support of this claim, Defendant relies on: (1) a hearsay document, an air waybill issued by Aeroflot Cargo Service; and (2) an unsupported allegation that Defendant, not United Transport, paid the premium for insurance.[2]

Rather, it is clear from Randall's testimony that Defendant's only interest in the electronic goods was the hope of sharing profits in the event that the goods were resold in Russia:

> Q: So what financial interest in this shipment did New Bar have?
>
> A: 50/50. 50 percent would be New Bar and 50 percent our money, for profit, I mean, it will be –- for example, I invest $100,000, and profit line $20,000, then $10,000 is I&P Flamingo and $10,000 for New Bar.

(Randall Dep. at 112.) However, an expectation of profit on goods not under contract for resale at the time of loss is not an insurable interest, and there is no evidence that the goods in question

---

[2] With respect to the air waybill, Aeroflot Cargo Service is not a party to this action, and there is no indication that it knew or would be competent to testify as to whether or not Defendant had any interest in the electronics. The waybill constitutes inadmissible hearsay, and "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). Defendant's allegation that it paid the premium for insurance is unsupported by any evidence, and even if true, does not prove that it was the owner of the goods. See Symbol Press, Inc. v. S&L Properties Associates, 584 N.Y.S.2d 10 (1st Dep. 1992).

here were under contract for resale.  See A. PARKS, THE LAW AND PRACTICE OF MARINE INSURANCE AND AVERAGE, Vol I, p. 85 (Connell Maritime Press 1987)("an anticipated commission, or profit expected out of a sale of goods not yet contracted for at the time of loss, is not an insurable interest."); Armada Supply, Inc. v. Wright, 858 F.2d 842 (2d Cir. 1988).  Thus, Defendant has failed to show any insurable interest in the goods, and Plaintiff is granted summary judgment on this point.

C.  Notice of Claim

Plaintiff also argues that Defendant did not provide notice of its claim within a reasonable time period and that such a failure constitutes a complete defense to any claim for loss of the electronics.  The Policy provides, in "Instructions in Case of Claims":

> 1. In case of damage or loss on the arrival of the good, the receiver shall immediately call on the claims agent, indicated in the Policy, to effect a survey.
>
> 2. In order to maintain recourse, the receivers shall address, by registered post - before taking reception of the goods - a letter of protest to the shipping company's agent, at the same time requesting him to attend the survey.  If the damage should not be apparent, the claim shall be lodged within three days of the delivery of goods.
>
> 3. In order to facilitate and accelerate the settling of the claim, the insured party of receivers shall send - without delay - to the insurers a complete file containing the following documents:
>
> > a) original insurance policy and endorsements if any;
> > b) original survey report;
> > c) original invoices;
> > d) original bill of lading and/or all other documents of transport (full set in case of total loss);
> > e) copy of letter of protest sent to the carrying agent rendering him responsible for the loss, and the original of

> his reply;
> f) all other documents relating to the loss, such as weight notes on departure and arrival, specifications, etc.

(Salomone Aff., Ex. 1.) Similarly, the front side of the Certificate reads:

> CLAIMS SURVEY: In the event of loss or damage which may result in a claim under this insurance, immediate notice for survey is to be given to ➜
>
> INTERNATIONAL ADJUSTERS, LTD.
> [Address and contact information]

(Salomone Aff., Ex. 12.) The reverse side of the Certificate reads:

> PROCEDURE IN THE EVENT OF LOSS OR DAMAGE FOR WHICH UNDERWRITERS MAY BE LIABLE:
>
> In the event of loss or damage which may result in a claim under this insurance, immediate notice should be given to the Survey Agent shown overleaf in order that they may examine the goods and issue a survey report.
>
> [Contact information and necessary documentation follows]

(Salomone Aff., Ex. 12.)

New York law requires that the insured notify the insurer of its claim within a reasonable time. See Fireman's Fund Inc. Co. v. Schuster Films, Inc., 811 F.Supp. 978 (S.D.N.Y. 1993); Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991); Thompson v. Power Authority of the State of New York, 629 N.Y.S.2d 760 (1st Dep. 1995). Relatively short periods of unexcused delay in providing notice of a claim have been found unreasonable as a matter of law. See Utica Mutual Ins. Co. v. Fireman's Fund Ins. Companies, 748 F.2d 118 (2d Cir. 1984)(finding 5 months an unreasonable delay); Power Authority of the State of New York v. Westinghouse Electric Corp., 502 N.Y.S.2d 420 (1st Dep. 1986)(finding 53 days an unreasonable delay); Deso v. London & Lancashire Indemnity Co. of

America, 164 N.Y.S.2d 689 (1957)(finding 51 days an unreasonable delay).

Here, the cargo was lost on January 20, 1994, and notice was not provided to Plaintiff until March 31, 1994, a delay of approximately sixty days -- well within the periods found unreasonable in the line of cases cited above. (Salomone Aff., ¶ 9.) Further, an insured's failure to provide notice of a claim within a reasonable time is a complete defense to liability under an insurance policy, even in the absence of any prejudice to the insurer.[3] See Security Mutual Ins. Co. of New York v. Acker-Fitzsimmons Corp., 293 N.E.2d 76 (1972).

Defendant responds by suggesting that it offered two communications to Plaintiff in advance of the March 31, 1994 letter that should have put Plaintiff on notice of the claim Defendant intended to file under the Policy. The first communication is a letter dated February 8, 1994 faxed from Defendant to Aeroflot Cargo Service. (Nicoletti Aff., Ex. E.) However, Defendant offers no evidence to show that the letter was received by United Transport and forwarded on to Plaintiff. Secondly, Defendant alleges that Peter Stern of United Transport telephoned "plaintiff's claims agent [International Adjusters] and informed it of the problem with the New Bar shipment" on February 2, 1994. (Def's. Br. at 13.) However, Randall testified that he never spoke to the insurance company and that he did not know with whom Mr. Stern allegedly spoke. (Randall Dep. at 63-64.) Randall's knowledge can therefore only be based on what he was told by Mr. Stern, making his statements regarding the alleged February 2, 1994 phone call inadmissible hearsay and not cognizable on summary judgment. Accordingly, Plaintiff is granted summary judgment on this issue.

---

[3] While Plaintiff does not have to show prejudice in order to succeed on its unreasonable delay argument, it is worth noting that a meaningful investigation into an alleged theft of electronics in Moscow is made decidedly more difficult after a sixty-day delay.

D. <u>Discharge Survey</u>

Finally, Plaintiff argues that recovery under the Policy required Defendant to conduct a discharge survey and that Defendant conducted no such survey in connection with the lost electronics. The Policy states:

> WARRANTY: Discharge survey and armed guards protecting the cargo from discharge port to final destination at assured's costs and expenses. This warranty does not apply for shipments under US dollar 20,000,-.
>
> LOADING AND DISCHARGE SURVEYS: On all loading and discharge surveys, International Adjusters will be assigned.

(Salomone Aff., Ex. 1.) The Certificate features an identical warranty. (Salomone Aff., Ex. 12.) Compliance with a policy warranty is a condition precedent to liability and affords the insurer a complete defense. See <u>Levine v. Aetna Ins. Co.</u>, 139 F.2d 217 (2d Cir. 1943).

Here, it is undisputed that Defendant did not retain any surveyor to conduct a discharge survey. Defendant admits as much in its Amended Complaint against Plaintiff and United Transport in the Supreme Court of New York, Kings County:

> <u>TWENTY</u>: Defendant UNITED TRANSPORT negligently and carelessly failed to inform plaintiff of the insurance carrier's requirement for a discharge survey to be conducted upon the shipment's arrival at the destination airport. Hence, neither plaintiff nor one of its agents met the airplane upon its arrival.
>
> <u>TWENTY-FOURTH</u>: Defendant UNITED TRANSPORT negligently and carelessly failed to perform a discharge survey upon the shipment's arrival at the destination airport pursuant to the terms and conditions it procured for plaintiff.

(Nicoletti Aff., Ex. B.) In response, Defendant references a document which it calls "Commercial Act 90," a document allegedly prepared by the Russian Government in connection with the January 20, 1994 theft. Defendant then argues that this document satisfies the American

12

Heritage Dictionary definitions of "discharge" and "survey." However, "Commercial Act 90" itself is written in Russian, and Defendant offers no certified translation. Defendant also makes no representation as to what the document contains, who prepared it, when it was prepared, and for what purpose. It is therefore inadmissible hearsay and not cognizable on summary judgment. Plaintiff is granted summary judgment on this point.

IV. Conclusion

For these reasons, Plaintiff's motion for summary judgment (Docket No. 17) is granted. The Clerk of the Court shall mark the matter closed.

Dated: New York, New York
       May 12, 2005

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge